984 So.2d 564 (2008)
PORT-A-WELD, INC., Appellant,
v.
PADULA & WADSWORTH CONSTRUCTION, INC., Appellee.
Nos. 4D07-2104, 4D07-391.
District Court of Appeal of Florida, Fourth District.
May 21, 2008.
Rehearing Denied July 11, 2008.
*566 Herbert B. Dell of Herbert B. Dell, P.A., Fort Lauderdale, for appellant.
James B. Boone, Sunrise, for appellee.
TAYLOR, J.
In these appeals, consolidated for opinion purposes, Port-A-Weld, Inc. (Port-A-Weld) appeals a final judgment which awarded it money damages but declared appellee Padula & Wadsworth Construction, Inc. (Padula) the prevailing party for purposes of attorney's fees and costs. Both parties appeal a subsequent order which determined that they were both prevailing parties and effectively denied each party's claim for attorney's fees and costs. We reverse.
Padula was the general contractor on a project known as the West Central Bus Complex, which was owned by the School Board of Broward County. Port-A-Weld was a subcontractor hired by Padula to build metal pan stairs and other steel work in the complex for $150,000. Port-A-Weld fabricated the stairs at its shop and installed them on the job site on February 5, 2003. After Padula notified Port-A-Weld in writing that the stairs had failed inspection on May 15, 2003, Port-A-Weld demolished and rebuilt the stairs by June 12, 2003. The stairs then passed inspection.
Port-A-Weld agreed to pay Padula $900 for re-pouring the concrete as "back charges" from the contract. It also agreed to a $411.10 back charge for damage to a countertop caused by one of Port-A-Weld's employees. The contract price, including the change orders, totaled $176,314.40. The parties stipulated that Padula paid only $142,377.76. That left $33,936.64 unpaid, despite demand for payment. On January 12, 2004, about seven months after the stairs passed inspection, Padula notified Port-A-Weld of a new back charge of $6,000. Padula labeled this back charge as liquidated damages for twelve days of delay at $500 a day. Before assessing this charge, Padula had not notified Port-A-Weld that it was going to be charged delay damages. One week later, Padula notified Port-A-Weld about another back-charge of $17,000 in liquidated damages for thirty-four days of delay. The contract contained no liquidated damages provision and the School Board did not charge Padula any delay penalties for this project. At trial, Padula's counsel informed the court that they were now seeking $800 a day for 58 days of delay caused by Port-A-Weld, totaling $46,400.
Padula incurred $560 in concrete costs to redo the job, $900 for concrete finishers, and $260 for renting a dumpster for removal of the demolished stairs. It also incurred labor costs of $5,000.40, mostly for cleanup and some for helping to pump concrete into the second set of stairs.
Port-A-Weld filed a single-count complaint against Padula seeking $33,936.74, plus prejudgment interest due from July 25, 2003, attorney's fees and costs. Port-A-Weld later amended its complaint to allege two counts for breach of contract and unjust enrichment. The same remedies *567 were sought in the amended complaint. During closing argument, Port-A-Weld's counsel stated that it sought $33,502.04 on Count I and an additional $434.60 on Count II in connection with an unsigned change order.
Padula filed a counterclaim seeking delay damages and other offsets. In his opening statement, Padula's counsel claimed that Padula incurred over $60,000 in damages, including approximately $10,000 in out-of-pocket expenses and a $50,000 balance attributable to the alleged delay. Padula's president testified that he was seeking $54,961 in damages from Port-A-Weld in back charges, the vast majority of which involved the delay damages.
On June 14, 2006, the trial court orally announced its decision, making specific findings primarily in favor of Port-A-Weld. The court first stated that it was denying the counterclaim for delay damages, as there was no proof that a date certain for performance was ever established and because the damages alleged were too speculative. It found that Port-A-Weld was entitled to the $150,000 contract amount (of which $142,377.76 had been paid), plus the amounts called for in all but one of the change orders. However, the court held that this sum had to be reduced by a 2% retainage, concluding that the school board had not paid the last 2% on the project. The court stated that Padula would be responsible for this 2% amount when it received that sum from the School Board. The court also found setoffs for certain consequential damages to Padula. One of the items was the $5,000 claim for labor. However, rather than award the full amount, the trial court awarded only a $3,000 setoff for this item. It also found that Port-A-Weld was entitled to $434.60 on the unjust enrichment count as to Change Order Number 12.
The court directed the parties to prepare a written final judgment based on its oral rulings. On June 20, 2006, before entry of the final judgment, Padula tendered Port-A-Weld a check for $24,649.53, the payment amount orally specified by the court. Port-A-Weld rejected the tender. On July 3, 2006, Port-A-Weld made a motion for the court to determine the form of the final judgment and to compute prejudgment interest. Port-A-Weld also moved to tax costs in the amount of $3,168.75, pursuant to § 57.041, Fla. Stat. On September 12, 2006, the trial court held a hearing on the motions. It held that because of Padula's tender, prejudgment interest would be cut off as of June 20, 2006. The trial court orally ruled that the principal plus prejudgment interest owed on the judgment was $24,250.10. It entered a written order allowing Padula to pay the sum of $24,250.10 into the court registry.
On January 10, 2007, the trial court resumed the hearing, noting that it had not yet entered a final judgment. The court declined to award any more interest after the date of its prior ruling, because the delay was caused by Port-A-Weld's unsuccessful arguments about the amount of interest. Port-A-Weld argued that Article V of the subcontract agreement entitled it to prejudgment interest at 18%, as well as attorney's fees.
Article VI, (D) of the subcontract states:
Subcontractor and Contractor agree that in the event arbitration proceedings or litigation is initiated by either party, the non prevailing party shall be liable for all arbitrator's fees and costs, attorney's fees and court costs incurred by the prevailing party at all levels of proceedings or negotiations. For the purposes of this Agreement, a party shall not be considered as a "prevailing party" *568 if its recovery shall be less than 75% of its claim amount.
Port-A-Weld argued that the 75% prevailing party threshold in the contract was against public policy under § 57.105, Fla. Stat. The trial court disagreed and determined that Padula was the prevailing party based upon the language of the contract. On January 11, 2007, the trial court entered an "Order on Amounts Owed, Prejudgment Interest and Determination of Prevailing Party." The order states that Port-A-Weld shall recover $20,434.04, plus pre-judgment interest in the amount of $3366.06, for a total of $24,250.10. The court reserved jurisdiction to determine the "amount of attorney's fees and costs to be awarded to the Defendant who is the prevailing party under Count I of the Amended Complaint as provided in the contract at Article VI, paragraph D, which shall be a setoff against both the sum awarded to the Plaintiff and previously deposited in the Court Registry . . ." Port-A-Weld appealed this as a final judgment.
On January 22, 2007, Padula filed a motion for attorney's fees and costs. It sought 258.5 hours of attorney time at the rate of $250 per hour ($64,625), plus costs in the amount of $3,863.80. On March 5, 2007, the trial court held a hearing on the motion. At that hearing, the trial court decided to revisit his determination that Padula had been the prevailing party. Although Padula objected, it did not articulate any basis for the objection and did not argue, as it now does on appeal, that its due process rights were violated because it had anticipated that the hearing would be confined to a determination of the amount of attorney's fees owed Padula.
On May 7, 2007, the trial court entered an order titled "Order Determining Prevailing Party." This states that Padula is the prevailing party as to Port-A-Weld's claims and that Port-A-Weld is the prevailing party as to Padula's compulsory counterclaim. The court thus modified its earlier order and stated:
The Court further finds that the issues raised on both sides were significant and that the attorney's fees for both sides are a wash because both sides spent about the same amount of time with the claim and the counterclaim because they were quite interrelated.
Port-A-Weld appealed this order and Padula cross-appealed.
Generally, interpretation of a document, such as a written contract, is a question of law rather than of fact. Peacock Constr. Co. v. Modern Air Conditioning, Inc., 353 So.2d 840, 842 (Fla.1977). For that reason, such cases are reviewed de novo. See Sumner Group, Inc. v. M.C. Distributec, Inc., 949 So.2d 1205, 1206 (Fla. 4th DCA 2007). Although the standard of review is different where ambiguous contracts have required parol evidence to resolve the ambiguity, in this case no parol evidence as to the meaning of the critical terms was introduced. See Barone v. Rogers, 930 So.2d 761, 764 (Fla 4th DCA 2006).
Attorney's fees incurred while prosecuting or defending a claim are not recoverable in the absence of a statute or contractual agreement authorizing their recovery. Price v. Tyler, 890 So.2d 246, 250 (Fla.2004). Costs, on the other hand, are recoverable by statute by the "party recovering judgment." § 57.041, Fla. Stat. (2006).
"Provisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced." Lashkajani v. Lashkajani, 911 So.2d 1154, 1158 (Fla.2005). However, the provision in the subject agreement that "a party shall not be considered as a `prevailing party' if *569 its recovery shall be less than 75% of its claim amount" is relatively unique.
The parties do not dispute that the counterclaim filed in this case was compulsory. Thus, the trial court should not have considered Port-A-Weld's main claim and Padula's counterclaim as distinct claims upon which there could be different prevailing parties. See Orix Capital Markets, LLC v. Park Avenue Assoc., Ltd., 881 So.2d 646, 650 (Fla. 1st DCA 2004). In Orix Capital Markets, the first district held that compulsory counterclaims are not distinct claims as a matter of law and thus cannot support the declaration of multiple prevailing parties. Although some districts recognize that cases can sometimes effectively be "ties," such that the parties can both be viewed as winners or losers, we have maintained that "[i]n a breach of contract action, one party must prevail." Lucite Ctr., Inc. v. Mercede, 606 So.2d 492 (Fla. 4th DCA 1992) (citing Reinhart v. Miller, 548 So.2d 1176, 1177 (Fla. 4th DCA 1989)); see also Green Cos., Inc. v. Kendall Racquetball Inv., Ltd., 658 So.2d 1119 (Fla. 3d DCA 1995); cf. Merchants Bonding Co. (Mut.) v. City of Melbourne, 832 So.2d 184, (Fla. 5th DCA 2002); KCIN, Inc. v. Canpro Invs., Ltd., 675 So.2d 222, 223 (Fla. 2d DCA 1996). In any event, this case was not even close to a "tie." There was never any question but that Port-A-Weld was entitled to virtually its entire contract price. Padula succeeded in recovering less that 20% of the offsets it claimed, the vast majority of which were for delay damages, which the court entirely rejected.
The Florida Supreme Court has stated:
It is our view that the fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court.
Moritz v. Hoyt Enters., Inc., 604 So.2d 807, 810 (Fla.1992).
Under the "significant issues" test, Port-A-Weld was clearly the prevailing party. However, this does not end our discussion. We must still address the issue of the contractual 75% threshold in this case. We must decide, as a matter of first impression, whether the "significant issue" test for determining prevailing party attorney's fees can be modified by contract. Port-A-Weld makes two arguments to suggest that it cannot.
First, Port-A-Weld points to the decision in P & C Thompson Bros. Construction Co. v. Rowe, 433 So.2d 1388, 1389 (Fla. 5th DCA 1983). There, the contract provided that the subcontractor had to pay the general contractors fees if he did not recover 100% of the money he sought. The first district rejected that provision as against public policy, stating:
This provision is contrary to the general rule of allowing the "prevailing party" to be awarded costs, and can be seen as being contrary to public policy. A possible result under a provision like this is that a subcontractor may actually prevail on the great bulk of his claim, but because of a minor setoff in some manner, he will be forced to pay fees to the contractor.
In the instant case, Rowe is indeed the prevailing party, since he has recovered most of the monies he sought from Thompson with the exception of approximately $3,000 taken off for delay and actual damages. Clearly, to force Rowe to pay attorney's fees here would be improper. See: Kendall East Estates, Inc. v. Banks, 386 So.2d 1245 (Fla. 3d DCA 1980).
Id.
Second, as Port-A-Weld points out, since P & C Thompson Bros. was *570 decided, the Florida Legislature has adopted the attorney's fee reciprocity statute, codified at Fla. Stat. 57.105(7) (2006), which provides:
If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract. This sub-section applies to any contract entered into on or after October 1, 1988.
The public policy consideration underlying this statute "is to provide mutuality of attorney's fee remedy in contract cases." Walls v. Quick & Reilly, Inc., 824 So.2d 1016, 1019 (Fla. 5th DCA 2002). Such statutes serve to level the playing field between parties of unequal bargaining power and sophistication. Precision Tune Auto Care, Inc. v. Radcliffe, 815 So.2d 708, 710-11 (Fla. 4th DCA 2002).
At worst, Port-A-Weld is the 60% winner (but more than 80% considering the outcome of the counterclaim). In our view, failing to recognize Port-A-Weld's entitlement to fees and costs as the prevailing party violates the mutuality principle of § 57.105(7) and pre-existing public policy as articulated in P & C Thompson Bros.[1]
We conclude that the Florida Supreme Court's "significant issue" test for prevailing party attorney's fees cannot be contractually modified. Thus, Port-A-Weld is the prevailing party in this case and should be awarded all of its attorney's fees and costs; Padula is not entitled to recover any attorney's fees or costs.
We have considered all other arguments raised by the parties and find them to be without merit or need for further explanation, except for the following two points. First, no justification existed for holding the money due on the judgment to Port-A-Weld in the court registry pending determination of Padula's attorney's fee claim. It should be released immediately. Further, judgments automatically bear post-judgment interest by operation of law, whether they say so or not. See Quality Engineered Installation, Inc. v. Higley S., Inc., 670 So.2d 929, 931 (Fla.1996). Because the trial court here ruled that that payment into the court registry cut off interest, both parties appear to assume that the trial court's silence about post-judgment interest means that the trial court intended for there to be no accrual of post-judgment interest. However, this would not be a correct assumption. Padula's "unconditional" tender was made based on its interpretation of the court's oral findings before a written judgment was entered. We can find no authority for the notion that such a pre-judgment tender affects an award of post-judgment interest. In any event, by the time the written judgment was entered, it no longer qualified as an unconditional tender; it had been transformed into a payment into the registry of the court to be held as a setoff for the attorney's fee award. Thus, Port-A-Weld's automatic right to post-judgment interest cannot be defeated by a payment into the registry of the court, where Port-A-Weld had no access *571 to the money. Cf. § 55.141, Fla. Stat. (2006) (providing for satisfaction by payment to the court registry, but providing for funds to be paid over to judgment holder upon demand). Thus, Port-A-Weld's entitlement to post-judgment interest at the legal rate commenced on January 11, 2007.
Affirmed in part, Reversed in part, and Remanded.
SHAHOOD, C.J., and LEVIN, STEVEN J., Associate Judge, concur.
NOTES
[1] We reject Padula's argument that the subcontract agreement's 75% threshold is comparable to the 75% threshold in the offer of judgment statute. First, if we permitted contractual modification of the prevailing party rule up to this point, how could we justify disallowing a 90% or 98% threshold in another contract, which would eviscerate the concept of mutuality embodied in 57.105(7) even more? Moreover, if parties with superior bargaining strength can contractually insulate themselves from paying any attorney's fees with just a 25% success, why would they ever bother making offers of judgment?